UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| **JAMES T. STILE,** | |
| **Plaintiff,** | Civ. No. 17-2693 (RMB) |
| v. | |
| **UNITED STATES OF AMERICA, *et al.*,** | OPINION |
| **Defendants.** | |

**BUMB, District Judge**

Plaintiff James T. Stile seeks to bring a civil rights complaint pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) against the United States of America, past and present wardens of FCI Fort Dix, FCI Fort Dix employee Brian Womack, and Dr. Ravi Sood, alleging that the conditions of confinement at FCI Fort Dix and the inadequate medical care provided to him violate the Eighth Amendment. (Compl., ECF No. 1.) He has filed an application to proceed *in forma pauperis* ("IFP"), which establishes his financial eligibility to proceed without prepayment of fees. (IFP App., ECF No. 1-1.)

28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) require courts to review a prisoner's complaint in a civil action and *sua sponte*

dismiss any claims that are (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. For the reasons discussed below, the Court grants the IFP application, dismisses with prejudice the Bivens claims against the United States, Brian Womack and Ravi Sood in their official capacities; dismisses the Eighth Amendment failure to protect and Eighth Amendment inadequate medical care claims without prejudice; and permits the Eighth Amendment conditions of confinement claims to proceed, subject to briefing by the parties of the effect of Ziglar v. Abbasi, 137 S.Ct. 1843 (2017) on the Bivens remedy.

I. *Sua Sponte* Dismissal

Courts must liberally construe pleadings that are filed *pro se*. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Thus, "a *pro se* complaint, however inartfully pleaded, must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Id. (internal quotation marks omitted). "Court personnel reviewing *pro se* pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making." See Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 339-40 (3d Cir. 2011) (quoting Jonathan D. Rosenbloom, Exploring Methods to Improve Management

and Fairness in Pro Se Cases: A Study of the *Pro Se* Docket in the Southern District of New York, 30 Fordham Urb. L.J. 305, 308 (2002)).

Under 28 U.S.C. § 1915(e)(2)(B), district courts must review complaints filed by persons proceeding *in forma pauperis* in civil actions, and dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a) also requires an identical screening for "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.)

"[A] court must accept as true all of the allegations contained in a complaint[.]" Id. Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

II. DISCUSSSION

    A. The United States as a Defendant

Plaintiff names the United States of America as a defendant in this Bivens Action, alleging his conditions of confinement at FCI Fort Dix violate the Eighth Amendment, and that he received inadequate medical care in violation of the Eighth Amendment. Plaintiff also sues two federal employees, Brian Womack and Dr. Ravi Sood, in their official capacities.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1994) (citations omitted). Similarly, federal

4

officials sued in their official capacities are immune from suit. See Hines v. Irvington Counseling Center, 933 F.Supp. 382, 388 (D.N.J. Jan. 23, 1996) (dismissing suit against federal agency employees in their official capacities); Kentucky v. Graham, 473 U.S. 159, 166 (1985) (a suit against a federal officer in his official capacity is actually a suit against the United States). Plaintiff's Bivens claims against the United States, and against Brian Womack and Dr. Ravi Sood in their official capacities, are dismissed with prejudice because they are immune from Bivens liability.

The United States is a proper defendant to an FTCA claim based on negligent acts of federal employees, but there is a jurisdictional prerequisite that a plaintiff must first present the claim to the appropriate agency in writing, and request a sum certain for damages. Hoffenberg v. U.S., 504 F. App'x 81, 83 (3d Cir. 2012) (citing 28 U.S.C. § 2675(a); Deutsch v. United States, 67 F.3d 1080, 1091 (3d Cir. 1995)). If Plaintiff intended to bring an FTCA claim, he must file an amended complaint, establishing that he met the jurisdictional prerequisites.

  B.  Ziglar v. Abbasi

On June 19, 2017, the U.S. Supreme Court held that when a party seeks to assert an implied cause of action under the

Constitution, courts must not extend Bivens to a new context[1] if there are "special factors counseling hesitation in the absence of affirmative action by Congress." Ziglar v. Abbasi, 137 S.Ct. 1843, 1857 (2017) (citation omitted). "If there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, courts must refrain from creating the remedy." Id. at 1858. An alternative remedial structure may also limit the Judiciary's power to infer a new Bivens cause of action. Id.

First, courts must determine whether a claim arises in a new Bivens context, and the context is new if the case is different in a meaningful way from the previous Bivens cases decided by the Supreme Court. Id. at 1859. Meaningful differences may include,

> the rank of the officers involved; the constitutional right at issue; the extent of judicial guidance [for the official conduct]; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential

---

[1] There are only three instances where the Supreme Court has found an implied cause of action for a Constitutional violation by agents of the Federal Government: Bivens, 403 U.S. 388 (Fourth Amendment unlawful search and seizure); Davis v. Passman, 442 U.S. 228 (1979) (Fifth Amendment gender discrimination); and Carlson v. Green, 446 U.S. 14 (1980)(Eighth Amendment claim of inadequate medical care in prison).

6

> special factors that previous *Bivens* cases did not consider.

Id. at 1860.

Second, courts must conduct the special factors analysis to determine whether Congress, not the courts, should decide whether a damages action should be allowed. Id. at 1857. For example, a Bivens action is not a proper vehicle for altering high-level executive policy. Id. at 1860. Third, courts must consider whether there were other alternative forms of judicial relief available, including injunctions and habeas petitions. Id. at 1849; see also Vanderklok v. United States, 868 F.3d 189, 200 (3d Cir. 2017) (discussing analysis under Ziglar). However,"[d]isposing of a Bivens claim by resolving the constitutional question, while assuming the existence of a *Bivens* remedy—is appropriate in many cases." Hernandez v. Mesa, 137 S.Ct. 2003, 2007 (2017).

C. Eighth Amendment Conditions of Confinement Claim

The conditions under which a prisoner is confined are subject to scrutiny under the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Helling v. McKinney, 509 U.S. 25, 31 (1993)). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety

7

of the inmates." Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526–527 (1984)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 837.

"[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Id. at 9 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981) (citation omitted). "Conditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." Rhodes, 452 U.S. at 347.

> The first aspect of judicial decisionmaking in this area is scrutiny of the actual conditions under challenge. It is important to recognize that various deficiencies in prison conditions "must be considered together." Holt v. Sarver, 309 F.Supp.[362,] 373 [E.D. Ark. 1970] The individual conditions "exist in combination; each

> affects the other; and taken together they [may] have a cumulative impact on the inmates." *Ibid.* Thus, a court considering an Eighth Amendment challenge to conditions of confinement must examine the totality of the circumstances. Even if no single condition of confinement would be unconstitutional in itself, "exposure to the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment." *Laaman v. Helgemoe*, 437 F.Supp. 269, 322-323 (NH 1977).

Rhodes, 452 U.S. at 362-63; Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996) (finding district court erred by failing to consider conditions of confinement as a whole.)

In his complaint, Plaintiff alleges he has been housed for two years in a twelve-man room with only 43 square feet of space for each inmate, and the common spaces are similarly overcrowded. (Compl., ECF No. 1, Ground Three.) Plaintiff alleges the overcrowded conditions result in physical confrontations between inmates and the spreading of disease. (Id.)

Plaintiff also complains of daily exposure to asbestos and mastic glue since June 2015 (Ground One); three day exposure to friable asbestos during a demolition job in the rear of the law library in September 2016 (id.); constant exposure to black mold in Building 5811; contaminated drinking water as evidenced by sludge and sediment in the water pipes, and as evidenced by a March 2017 news story about contamination of the water supply at

9

Joint Base McGuire-Dix-Lakehurst (Ground Four); inadequate ventilation because the window size was reduced and air handlers are used only in the summer, causing exposure to jet engine fumes where the housing unit is in close proximity to an active runway for take-offs and landings of military planes; and frequent exposure to diesel generator fumes when FCI Fort Dix regularly suffers power outages (Ground Five); unsanitary conditions including dripping of toilet drain pipes and shower drain pipes, overflowing garbage cans attracting bugs (unnumbered); lack of available sanitizer for the telephones (unnumbered); and excess humidity causing transmission of bacteria and viruses (unnumbered).

The injuries Plaintiff alleges to have suffered from these conditions include: potential lung damage from asbestos poisoning, with symptoms which may not appear for years; exacerbation of COPD and emphysema which causes him to use an inhaler more than he otherwise would; psychological distress from exposure to dangerous substances; cold, flu and E Coli infections; and fear of future development of cancer based on contaminated water. (Compl., ECF No. 1.) Plaintiff alleges Warden Jordan Hollingsworth and Warden David Ortiz were aware of but failed to do anything about these conditions for the period from June 2015 to the present. (Compl., ECF No. 1, ¶¶2, 3 and pp. 22-23.)

When "'the cumulative impact of the conditions of incarceration threatens the physical, mental, and emotional health and well-being of the inmates and/or creates a probability of recidivism and future incarceration,' the court must conclude that the conditions violate the Constitution." Rhodes, 452 U.S. at 364 (quoting Laaman v. Helgemoe, 437 F.Supp. 269, 323 (D.N.H. 1977)). Plaintiff has sufficiently pled that the combination of his conditions of confinement exacerbated his COPD and emphysema, caused the spread of illness, has the potential to cause serious damage to his future health, and caused him emotional distress about his health.

Although the Court will allow the conditions of confinement claim to proceed past screening pursuant to 28 U.S.C. § 1915(e)(2)(B); an Eighth Amendment conditions of confinement claim is a new Bivens claim, subject to the analysis set forth in Ziglar. Defendants may choose to file a motion to dismiss in lieu of an answer if they wish to assert that this Court should not imply a Bivens cause of action because there exists an alternative process capable of protecting the constitutional interests at stake or that there are factors counseling hesitation in implying a cause of action.

D. Eighth Amendment Inadequate Medical Care Claims

Plaintiff brings individual capacity Bivens claim against his primary care physician at FCI Fort Dix, Dr. Ravi Sood, for

11

inadequate medical care in violation of the Eighth Amendment. (Compl., ECF No. 1 at 20.) The Court notes this is not a new Bivens context under Ziglar. The Supreme Court has recognized an implied cause of action for Eighth Amendment inadequate medical care claims against a federal actor who is personally involved in the deprivation. Carlson v. Green, 446 U.S. 14 (1980).

Plaintiff alleges the following facts: (1) Dr. Sood failed to prescribe antibiotics to Plaintiff to treat E. Coli for more than a week after a urologist ordered the medication for Plaintiff; (2) Dr. Sood failed to review Plaintiff's medical records to determine the cause of the bacterial infections Plaintiff suffered for a year or longer; (3) Dr. Sood failed to prescribe antibiotics to Plaintiff for two months while Dr. Sood had laboratory records indicating Plaintiff had E Coli; (4) Dr. Sood did not properly treat Plaintiff's longstanding symptoms of constant diarrhea and urinary infections, and told Plaintiff to drink more water, but the water is contaminated; (5) Dr. Sood failed to order a bladder ultrasound test to diagnose Plaintiff's symptoms of fever, diarrhea, and burning urinary tract sensation. (Compl, ECF No. 1 at 20.) Plaintiff also alleges:

> Twice, the Plaintiff has submitted to a urine test and was not apprised of the positive results of bacterial infection for

> longer than a full month after the test results were in possession of the Defendants, then the Plaintiff was not dispensed antibiotics for as long as a week thereafter, all of which contributed to the unnecessary suffering both physically and psychologically of the Plaintiff.

(Id. at 19.)

To state an inadequate medical care claim under the Eighth Amendment's proscription against cruel and unusual punishment, an inmate must allege facts showing the defendant's conduct constituted "unnecessary and wanton infliction of pain" or that the defendant was deliberately indifferent to the inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "A medical need is "serious," in satisfaction of the second prong of the Estelle test, if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (quoting Pace v. Fauver, 479 F.Supp. 456, 458 (D.N.J.1979), aff'd, 649 F.2d 860 (3d Cir. 1981)).

Denial of or delay in treatment that causes unnecessary and wanton infliction of pain may also constitute a serious medical need. Id. (citing Estelle, 429 U.S. at 103). "[W]here denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." Id.

13

(citations omitted); Andrews v. Camden County, 95 F.Supp.2d 217, 227 (D.N.J. 2000) (same); Price v. Corr. Med. Serv., 493 F.Supp.2d 740, 745 (D. Del. 2007) (same). An allegation of medical malpractice or simple negligence does not rise to the level of a constitutional violation. Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).

Most of Plaintiff's allegations concerning his medical care amount to disagreement with the treatment he received from Dr. Sood. For example, the failure to review Plaintiff's medical records to look for a cause of the frequent bacterial infections Plaintiff suffered is a disagreement with how Dr. Sood evaluated and treated Plaintiff's bacterial infections. The failure to order a bladder ultrasound is also disagreement with the medical evaluation provided, and does not rise to the level of deliberate indifference.

The failure to prescribe antibiotics for E Coli is not deliberate indifference unless no other treatment was provided, and if the lack of antibiotics resulted in wanton and unnecessary infliction of pain. The same is true of Plaintiff's allegations that Dr. Sood failed to advise him of positive results for bacterial infection from a urine test for one month, and did not prescribe antibiotics for another week. Not all bacterial infections require treatment with antibiotics. See e.g. Stewart v. Kelchner, 358 F. App'x 291, 292 n. 1 (3d Cir.

2009) ("most MRSA skin infections can be treated without antibiotics by draining the sores") (quoting Kaucher v. County of Bucks, 455 F.3d 418, 421 (3d Cir. 2006)). The complaint lacks sufficient factual detail to draw the inference that failure to treat with antibiotics caused Plaintiff unnecessary and wanton infliction of pain.

Plaintiff also alleged Dr. Sood delayed for one week ordering the antibiotics prescribed by another physician. Plaintiff has not alleged the reason for the delay or how the delay caused him unnecessary and wanton infliction of pain. For example, if Dr. Sood disagreed with another physician's prescribed treatment, and prescribed a different course of treatment, deliberate indifference cannot be shown. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) ('[n]o claim is stated when a *doctor* disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness") (emphasis in original). For these reasons, Plaintiff's Eighth Amendment inadequate medical care claims against Dr. Sood are dismissed without prejudice.

E. Eighth Amendment Failure to Protect Claim

Plaintiff brings an Eighth Amendment failure to protect claim against federal employee Brian Womack, in his individual capacity. (Compl., ECF No. 1 at 21.) Plaintiff alleges Womack authorized the demolition of the "asbestos laden" floor in the

15

law library of Building 5842 in the West Compound of FCI Fort Dix in September 2016. (Id. at 4.) Plaintiff was exposed to breathing asbestos fibers and mastic glue for three days. (Id. at 21.) Womack conducted the asbestos removal "without proper protection and without going through the proper channels to remove the asbestos." (Id.) Plaintiff does not allege an injury that arose over these three days, but he alleges that he was exposed to a toxic substance that may cause future harm. (Id. at 4-5.)

To state a claim for an Eighth Amendment violation based on exposure to an environmental health risk, an inmate must show that he is being exposed to unreasonably high levels that pose an unreasonable risk of serious damage to his future health. See Helling v. McKinney, 509 U.S. 25, 35 (1993) (alleging exposure to second hand tobacco smoke). The objective factor of the test "also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Id.

Exposure for three days to asbestos tile removal does not violate contemporary standards of decency because it does not create an unreasonable risk of serious damage to future health. See Templeton v. Anderson, 607 F. App'x 784, 787 (10th Cir. 2015) (finding exposure to black mastic and asbestos-containing

16

tile for one hour did not violate contemporary standards of decency); McNeil v. Lane, 16 F.3d 123, 125 (7th Cir. 1993) (exposure to moderate levels of asbestos is common); compare Goss v. American Cyanamid, Co., 278 N.J.Super. 227, 236 (N.J. Super. Ct. App. Div. 1994) (in a product liability asbestos case, frequent, regular exposure by employees applying or removing asbestos demonstrated sufficient exposure to establish medical causation) (quoting Sholtis v. American Cyanamid Co., 238 N.J. Super 8 (N.J. Super. Ct. App. Div. 1989)). Therefore, the Court will dismiss with prejudice the Eighth Amendment failure to protect claim against Defendant Brian Mack in his individual capacity. The three-day removal of asbestos tiles from the law library may be considered as part of the conditions of confinement claim.

    F.    Motion for Subpoena

After submitting his complaint to the Court, Plaintiff filed a motion for a subpoena under Federal Rule of Civil Procedure 45, directing the non-party Labcorp Raritan to produce certified copies of all laboratory testing relating to Plaintiff. (Mot. for Subpoena, ECF No. 2). First, Plaintiff must submit a subpoena that complies with the form and contents

of a subpoena, as outlined in Federal Rule of Civil Procedure 45(a).[2]

Second, Federal Rule of Civil Procedure 45(a)(4) provides:

> (4) Notice to Other Parties Before Service. If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party.

After the summons and complaint have been served on Defendants Jordan Hollingsworth and David Ortiz, Plaintiff must serve the requisite notice of subpoena on them. Therefore, Plaintiff's motion for subpoena is denied without prejudice.

III. CONCLUSION

For the reasons stated above, the Court grants the IFP application, dismisses the <u>Bivens</u> claims against the United States, and Brian Womack and Ravi Sood in their official capacities; dismisses the Eighth Amendment failure to protect and Eighth Amendment inadequate medical care claims without prejudice; and permits the conditions of confinement claims to proceed, subject to briefing by the parties of the effect of

---

[2] The subpoena submitted by Plaintiff does not include the attachment described in the subpoena: "The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule of 5 (d) and e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached."

18

Ziglar v. Abbasi, 137 S.Ct. 1843 (2017) on an implied Bivens cause of action.

An appropriate order follows.

DATE: October 23, 2017

                              s/Renée Marie Bumb\
                              **RENÉE MARIE BUMB**\
                              **United States District Judge**