<u>NOT FOR PUBLICATION</u>                                      ECF 65

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

JAMES STILE,                          :
                                      :   Civ. Action No. 17-2693(RMB)
                Plaintiff             :
                                      :
    v.                                :              OPINION
                                      :
WARDEN JORDAN HOLLINGSWORTH           :
*et al.*,                             :
                                      :
                Defendants            :

APPEARANCES:

Francis X. Manning, Esq.
STRADLEY, RONON, STEVENS & YOUNG, LLP
Liberty View
457 Haddonfield Road
Suite 100
Cherry Hill, NJ 08002

Adam Joseph Petit, Esq.
Joseph William Catuzzi, Esq.
STRADLEY RONON STEVENS & YOUNG LLP
2005 Market Street
Suite 2600
Philadelphia, PA 19103

Samantha Beth Kats, Esq.
STRADLEY RONON STEVENS & YOUNG LLP
Great Valley Corporate Center
30 Valley Stream Parkway
Malvern, PA 19355
          On behalf of Plaintiff

Jessica Rose O'Neill, Assistant United States Attorney
Office of the U.S. Attorney, District of New Jersey
401 Market Street
4th FLOOR
P.O. BOX 2098
Camden, NJ 08101
          On behalf of Defendants

**BUMB**, United States District Judge

On April 20, 2017, Plaintiff brought this <u>Bivens</u> and Federal Tort Claim action, alleging he was subjected to unconstitutional conditions of confinement while incarcerated for two years at the Federal Correctional Institution  in Fort Dix, New Jersey ("FCI Fort Dix"). (Compl., ECF No. 1.) This matter comes before the Court upon Defendants Warden Jordan Hollingsworth and Warden David Ortiz's ("Defs.") Partial Motion to Dismiss Counts I, II and III of Plaintiff's Amended Complaint. ("Defs.' Partial Mot. to Dismiss," ECF No. 65); Plaintiff's Opposition to Defendants' Partial Motion to Dismiss ("Pl's Opp. Brief," ECF No. 73); Reply Brief in Further Support of Partial Motion to Dismiss Counts I, II and III of Plaintiff's Amended Complaint ("Defs.' Reply Brief," ECF No. 76); and Plaintiff's Sur-Reply Brief in Support of His Opposition to Defendants' Partial Motion to Dismiss. ("Pl's Sur-Reply Brief," ECF No. 78 at 10.) This Court will decide the motions on the briefs without an oral hearing, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons discussed below, the Court will grant in part and deny in part Defendants' Partial Motion to Dismiss.

I.   PROCEDURAL HISTORY

As required by 28 U.S.C. § 1915(e)(2)(b) and § 1915A, this Court reviewed the pro se complaint on October 23, 2017, and permitted certain claims related to the environmental conditions

2

at FCI Fort Dix against Wardens Hollingsworth and Ortiz to proceed, noting that they were subject to further briefing pursuant to the United States Supreme Court's decision in Ziglar v. Abbasi, 137 S. Ct. 1843 (2017). (Opinion and Order, ECF Nos. 4, 5.) Defendants moved for dismissal of Plaintiff's remaining claims. (First Mot. to Dismiss, ECF No. 29.) Plaintiff responded with a motion to amend his complaint to state his constitutional claims as tort claims under the Federal Tort Claims Act. (Mot. to Amend, ECF No. 32.) Plaintiff was appointed counsel on March 20, 2019. (Order, ECF No. 42.) After discussions with the Court, counsel filed an amended complaint on August 13, 2019. (Am. Compl., ECF No. 51.) Upon service of the amended complaint, Defendants filed the present partial motion to dismiss Counts I, II and III and a motion for partial summary judgment on Claim IV.

II.  AMENDED COMPLAINT

Plaintiff alleges the following in his amended complaint. Plaintiff was confined at FCI Fort Dix from June 2015 to December 2017. (Am. Compl. ¶1, ECF No. 51.) During that time, the United States of America was responsible for his care. (Id., ¶4.) Warden Hollingsworth was the warden of Fort Dix from June 2015 until approximately October 2016 and Warden Ortiz was the prison's warden from approximately October of 2016 through, at least, the remainder of Plaintiff's confinement. (Id., ¶¶5-6.)

Plaintiff alleges that during his confinement at Fort Dix, he was subject to deprivations of potable water, overcrowded and unsanitary conditions, and exposure to asbestos, mold and toxic fumes. (Id., ¶¶13-103.) As early as 2015, Warden Hollingsworth (and subsequently Warden Ortiz) became aware of water contamination at Fort Dix. (Am. Compl. ¶155, ECF No. 51.) However, Defendants did not address the contamination and, as a result, Plaintiff was forced to consume and bathe in water that was contaminated with dangerous chemicals. (Id.) Recognizing the dangers posed by the contaminated water, FCI Fort Dix prison staff used their own bottled water and bottled water distributed by the Government. (Id., ¶25.) On multiple occasions, staff at Fort Dix would tell Plaintiff "do not drink the water." (Id., ¶28.) Realizing that something was wrong with the water, Plaintiff requested bottled water, but his requests were denied by Defendants and others. (Id., ¶¶30-31.) Thus, Plaintiff contends, he was forced to consume contaminated water for years. (Id., ¶133.)

For the duration of Plaintiff's confinement at FCI Fort Dix, Plaintiff also alleges that he was forced to live in severely overcrowded conditions, sharing a room with twelve inmates, amounting to just 43 square feet of living space for each inmate. (Id., at ¶60.) This was significantly less than the mandated sixty square feet, as set forth in Program Statement-1060.11, Part 7(3)(b), which states, "any multiple occupancy housing, areas in

4

a low security institution must provide at least 60 square feet per inmate." (Id.) The Warden Defendants were aware of the chronic overcrowding at FCI Fort Dix. (Id., ¶72.) In the amended complaint, Plaintiff alleges that as a result of overcrowding his residence had inadequate sanitation, including leaking bathroom pipes and refuse in the halls. (Id., ¶¶73-83.)

Plaintiff was also exposed to asbestos in the prison's flooring tiles and pipe coverings throughout the prison. (Id., ¶¶84-89.) Additionally, he was exposed to breathing airborne asbestos during a three-day demolition project in the law library, where he spent time because he was not notified of the asbestos exposure. (Id., ¶¶89-94.)

Plaintiff was exposed to black mold and toxic fumes. (Id., ¶¶39-46.) The black mold permeated throughout Plaintiff's primary residence and remained unabated despite repeated complaints. (Id., ¶¶43-45.) Likewise, Plaintiff was exposed to carbon monoxide and other fumes from jets operating close to his residence daily. (Id., ¶¶47-59.) Thus, Plaintiff suffered injuries including consumption of chemicals, damages to his respiratory system, an exacerbation of pre-existing conditions, numerous bacterial infections, Escherichia coli (commonly known as E. coli), urinary tract infections, severe emotional distress and anguish, and other injuries. (Id., ¶104.)

In Count I, Plaintiff brings a claim under the Federal Tort Claims Act ("FTCA") against the United States. 28 U.S.C. §§ 1346, 2671-2680. He claims that the United States breached a duty to provide him with clean water, clean air and a sanitary environment. (Am. Compl., ¶¶132-37.) Count II under the FTCA is for negligence per se in violation of federal and state environmental statutes, such as the Safe Drinking Water Act and the Clean Water Act. (Id., ¶¶138-142.) In Count III, Plaintiff seeks to recover from the present warden, Warden David Ortiz, and the former warden, Jordan Hollingsworth, under a Bivens theory of liability. (Id., ¶¶143-156.) Plaintiff claims that the wardens were aware of the various environmental issues as well as the overcrowding and that they maintained policies that allowed the conditions to persist. (Id.)

III. STANDARD OF REVIEW

Defendants raise a factual challenge to subject matter jurisdiction over Counts I and II, pursuant Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiff has not met the jurisdictional requirements of the FTCA. Rule 12(b)(1) permits a party to challenge subject matter jurisdiction in a responsive pleading. A factual challenge to subject matter jurisdiction is more than a pleading deficiency, but rather the failure to comport with jurisdictional prerequisites, U.S. ex rel. Atkinson v. PA. Shipbuilding Co., 473 F.3d 506, 512 (3d Cir. 2007) (citations omitted)). When deciding a factual challenge to jurisdiction, a

6

court can look at materials beyond the pleadings. Gould Elecs.
Inc. v. United States, 220 F.3d 169, 176-77 (3d Cir. 2000)).

Additionally, Defendants seek dismissal of Count III of the
amended complaint under Rule 12(b)(6) for failure to state a claim
upon which relief may be granted. When considering a Rule 12(b)(6)
motion to dismiss, courts must accept a plaintiff's allegations as
true "with the important caveat that the presumption of truth
attaches only to those allegations for which there is sufficient
"factual matter" to render them "plausible on [their] face."
Schuchardt v. President of the United States, 839 F.3d 336, 347
(3d Cir. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679
(2009)). The plausibility determination is context-specific and
requires a reviewing court to draw on its judicial experience and
common sense. Id. (citations omitted).

A plaintiff has the burden of pleading sufficient "factual
matter" but need not plead "specific facts." Id. (quoting Boykin
v. KeyCorp, 521 F.3d 202, 215 (2d Cir. 2008) (quoting Bell Atlantic
Corp. v. Twombly, 550 U.S. 544, 569 (2007) and Erickson v. Pardus,
551 U.S. 89, 93 (2007)). "Implicit in the notion that a plaintiff
need not plead 'specific facts' to survive a motion to dismiss is
that courts cannot inject evidentiary issues into the plausibility
determination." Id., (citing Twombly, 550 U.S. at 556). A court
may not dismiss a complaint based on the court's "assessment that
the plaintiff will fail to find evidentiary support for his

7

allegations or prove his claim to the satisfaction of the factfinder." Id. (quoting Twombly, 550 U.S. at 573.)

In reviewing the sufficiency of a complaint, a court must first identify the legal elements required to state a cognizable claim. Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 74 (3d Cir. 2011) (citing Iqbal, 129 S. Ct. at 1950, Santiago v. Warminster Tp., 629 F.3d 121, 129-30 (3d Cir. 2010)). Second, the court should identify allegations that are no more than conclusions that are not entitled to an assumption of truth. Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016). "[T]he clearest indication that an allegation is conclusory and unworthy of weight in analyzing the sufficiency of a complaint is that it embodies a legal point." Connelly, 809 F.3d at 790 (citing Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) (citation and internal quotation marks omitted).

Third, a court must determine whether the "well-pleaded factual allegations plausibly give rise to an entitlement to relief." Argueta, 643 F.3d at 74 (citing Iqbal, 129 S. Ct. at 1950, Santiago, 629 F.3d at 129-30.) The plausibility requirement "'is not akin to a 'probability requirement.'" Id. (quoting Iqbal, 129 S. Ct. at 1949). The plausibility requirement requires a pleading to show "'more than a sheer possibility that a defendant has acted unlawfully.'" Connelly, 809 F.3d at 786 (quoting Iqbal, 556 U.S. at 678)). Allegations that are "merely consistent with a

defendant's liability" … are not enough. Santiago, 629 F.3d at 133 (quoting Iqbal, 129 S. Ct. at 1949-50 (internal quotation marks omitted)). Where there is an allegation consistent with a defendant's liability but there is an "obvious alternative explanation," the inference of the defendant's liability is not plausible. Id.

IV. DISCUSSION

   A.   Jurisdiction Over FTCA Claims

       1.   Applicable Law

"Under the doctrine of sovereign immunity, the United States 'is immune from suit save as it consents to be sued….'" Cooper v. Comm'r, 718 F.3d 216, 220 (3d Cir. 2013) (quoting United States v. Testan, 424 U.S. 392, 399 (1976) (citation and internal quotation marks omitted)). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit". FDIC v. Meyer, 510 U.S. 471, 475 (1994)).

The FTCA is a limited waiver of sovereign immunity over claims against the federal government and its agencies. Dolan v. U.S. Postal Service, 546 U.S. 481, 484-85 (2006). For jurisdiction under 28 U.S.C. § 1346(b)(1), a claim must be made

> [1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the

9

> United States, if a private person, would be
> liable to the claimant in accordance with the
> law of the place where the act or omission
> occurred.'

CNA v. United States, 535 F.3d 132, 141 (3d Cir. 2008), as amended (Sept. 29, 2008) (quoting FDIC v. Meyer, 510 U.S. 471, 477 (1994) (quoting 28 U.S.C. § 1346(b)(1)) (alterations in original)).

Furthermore, 28 U.S.C. § 2675(a) mandates that a tort action "shall not be instituted" against the United States unless two prerequisites have been satisfied: (1) "the claimant shall have first presented the claim" to the agency and (2) the claim "shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a). Stated another way, no FTCA action may be commenced on a claim against the United States until the claimant has first presented, and exhausted, the available administrative remedies prior to bringing suit in any court. McNeil v. United States, 508 U.S. 106, 111-13 (1993). If a plaintiff files a suit without having submitted a timely claim to the appropriate agency, the suit must be dismissed. Id. at 112-13 (1993); Perez-Barron v. United States, 480 F. App'x 688, 691 (3d Cir. 2012). A complaint must also be dismissed for lack of jurisdiction if a plaintiff submits an administrative claim to the agency and then files a complaint before either: (1) the agency has finally denied the claim in writing, or (2) the six-month period for agency action

has expired, the complaint must be dismissed for lack of subject matter jurisdiction. Id. at 112-13.

### 2.   The Parties' Arguments

Defendants contend that Plaintiff has not complied with the administrative exhaustion requirement that is a jurisdictional prerequisite to bringing an FTCA claim in a federal district court. (Defs.' Brief, ECF No. 65-1 at 28.) Plaintiff filed the original complaint on April 20, 2017. (Defs.' Brief, ECF No. 65-1 at 30.) Plaintiff never filed an administrative claim before filing the complaint. (Id., citing Declaration of Tara Moran ("Moran Decl."), ECF No. ECF No. 65-2.) Plaintiff first submitted an administrative claim on June 5, 2017. (Id., ¶3, Ex. 1.) A few days later, the Bureau of Prisons ("BOP") responded by notifying Plaintiff that because his claim involved multiple unrelated allegations, he must refile separate claims. (Id., ¶4, Ex. 2.) Plaintiff failed to respond to the BOP's letter and did not take any further actions to exhaust his administrative remedies. (Id., ¶5.)

Defendants contend that Plaintiff's filing cannot satisfy the presentment requirement because Plaintiff filed his original complaint before the agency had "finally denied" the claim "in writing." 28 U.S.C. § 2675(a). (Defs.' Brief, ECF No. 65-1 at 31.) The subsequent filing of an amended complaint cannot undo the fact that the suit was initiated before administrative exhaustion was achieved. (Id., citing e.g., McNeil, 508 U.S. at 112; Perez-Barron,

480 F. App'x at 691; <u>Wadhwa v. Nicholson</u>, 367 F. App'x 322, 325 (3d Cir. 2010)). Therefore, Defendants assert that the Court lacks jurisdiction over Counts I and II, and they should be dismissed.

In opposition, Plaintiff contends that he met the jurisdictional requirements for his FTCA claims. (Pl's Brief, ECF No. 73 at 11.) Upon screening Plaintiff's original complaint, the Court was unsure whether Plaintiff intended to bring an FTCA claim, thus stated that if Plaintiff "intended to bring an FTCA claim, he must file an amended complaint, establishing that he met the jurisdictional prerequisites." (Pl's Brief, ECF No. 73 at 10, citing ECF. No. 4 at 5.) Following the Court's Order, Plaintiff amended his complaint and presented a claim under the FTCA against the United States of America. (<u>Id.</u> at 11.)

Plaintiff claims that he satisfied the two statutory prerequisites, prior to asserting his FTCA claim, by presenting his claim to the BOP on May 30, 2017, and responding to the BOP's letter requiring him to submit separate "SF95" forms on June 17, 2017. (<u>Id.</u>, citing Declaration of James Stile, ("Stile Decl.") ¶¶2-3, ECF No. 73 at 22.) The BOP still has not issued a written decision on Plaintiff's administrative claims. (<u>Id.</u>, citing Stile Decl., ¶5.) Pursuant to 28 U.S.C. § 2675(a), the FTCA claims may be considered denied "any time" after six months. (<u>Id.</u>) If the Court finds that it lacks jurisdiction, Plaintiff will seek to file the FTCA claim in a separate complaint. (<u>Id.</u> at 13.)

12

In reply, Defendants contend that Plaintiff's individual SF-95 forms were not presented to the agency. (Defs.' Reply Brief, ECF No. 73 at 6.) Pursuant to 28 C.F.R. § 14.2, "a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident…" (Defs.' Reply Brief, ECF No. 73 at 6.)) Defendants contend Plaintiff failed to meet his burden to demonstrate that the federal agency was in actual receipt of his claim. (Id., quoting Lightfoot v. U.S., 564 F.3d 625, 628 (3d Cir. 2009) ("We now join these sister Courts in rejecting the mailbox rule and holding that a plaintiff must demonstrate that the Federal agency was in actual receipt of the claim, whether on initial presentment or on a request for reconsideration.")) According to the Declaration of Tara Moran, Plaintiff never refiled his claims on individual SF-95 forms. (Id., citing Moran Decl. ¶5.) In response, Plaintiff asserts that there is a fact question requiring discovery of whether Defendants received Plaintiff's SF-95s. (Pl's Sur-reply, ECF No. 78 at 10-11.)

3.  Analysis

Upon review of the original complaint, the Court concludes that Plaintiff, acting pro se in April 2017, raised an FTCA claim. In Plaintiff's jurisdictional statement, he asserted jurisdiction under Bivens and 28 U.S.C. § 1346. (Compl., ECF No. 1 at 2-3.)

13

Consistent with an FTCA claim, Plaintiff named the United States of America as a defendant, based on alleged negligence of government employees. (See generally, Compl., ECF No. 1.) The complaint was filed on April 20, 2017, and the BOP received Plaintiff's first submission regarding his claims on June 5, 2017. (Moran Decl., ¶3, ECF No. 65-2.) This was well in advance of the Court's October 23, 2017 Opinion and Order, directing Plaintiff to file an amended complaint establishing exhaustion of administrative remedies if he was asserting an FTCA claim. (Opinion and Order, ECF Nos. 4, 5.)

As such, Plaintiff prematurely filed an FTCA complaint on April 20, 2017, without meeting the FTCA jurisdictional requirements. Plaintiff's FTCA claims were not saved by filing an amended complaint on August 13, 2019. See Priovolos v. Fed. Bureau of Investigation, 686 F. App'x 150, 152 (3d Cir. 2017) ("the subsequent filing and denial of a claim after suit has been commenced does not overcome the failure to exhaust administrative remedies and premature filing of the complaint") (quoting McNeil, 508 U.S. at 111-12.)) Therefore, the Court lacks jurisdiction over Plaintiff's FTCA claims, and Counts I and II are dismissed without prejudice.[1]

---

[1] Plaintiff seeks leave of court to file a new FTCA action. Leave of court is not required to file a new action and Defendants may raise any defenses deemed proper if such action is filed.

B.   Whether Special Factors Counsel Hesitation in Implying a Bivens Remedy for an Eighth Amendment Conditions of Confinement Claim

Defendants ask the Court to dismiss the claims in Count III, arguing the Court should not extend the Bivens damages remedy into this new context because (1) there are alternative processes available to protect the interests at issue here and (2) special factors counsel against extending Bivens to this context. (Defs.' Brief, ECF No. 65-1 at 11.)  "Whether a cause of action exists is not a question of jurisdiction, and may be assumed without being decided" See Bistrian, 912 F.3d at 89 n.15 (quoting Air Courier Conference of Am. v. Am. Postal Workers Union AFL-CIO, 498 U.S. 517, 523 n.3 (1991)). Thus, the Court assumes a damages remedy is available for allegations of failure to protect Plaintiff from environmental conditions that pose a serious risk to his health and for conditions that caused Plaintiff to suffer a serious medical need to be removed from exposure to those conditions, and that Defendants were aware of the risks but refused to protect Plaintiff. See Helling v. McKinney 509 U.S. 25 (1993) (holding Eighth Amendment claim exists where conditions posed a serious risk to prisoner's future health); Estelle v. Gamble, 429 U.S. 97 (1976) (holding allegations that prisoner suffered a serious medical need and prison official was deliberately indifferent to the need for treatment states an Eighth Amendment claim). Therefore, the Court turns to the qualified immunity defense.

C.  <u>Qualified Immunity on Bivens Claims</u>

Defendants assert the affirmative defense of qualified immunity to the Eighth Amendment conditions of confinement claims.

1.  <u>Standard of Review</u>

The defense of qualified immunity to a <u>Bivens</u> claim may properly be addressed at the motion to dismiss stage. <u>See</u> <u>e.g.</u> <u>Iqbal</u>, 556 U.S. at 672. "The doctrine of qualified immunity shields government officials from <u>Bivens</u> claims and money damages, unless a plaintiff can establish that the official violated a statutory or constitutional right, and that the right was 'clearly established at the time of the challenged conduct.'" <u>Bryan v.</u> <u>United States</u>, 913 F.3d 356, 362 (3d Cir. 2019) (citing <u>Pearson v.</u> <u>Callahan</u>, 555 U.S. 223, 236 (2009)).

There are two inquiries in determining qualified immunity and courts may address the inquiries in either order. <u>Pearson v.</u> <u>Callahan</u>, 555 U.S. at 232. The two inquiries are (1) "whether the facts that [the plaintiff] has alleged . . . make out a violation of a constitutional right" and (2) if so "whether the right at issue was 'clearly established.'" <u>Id.</u> (citations omitted).

A constitutional right is "clearly established" if, at the time of the challenged conduct, "'[t]he contours of [a] right [are] sufficiently clear'" that every "'reasonable official would have understood that what he is doing violates that right.'" <u>Ashcroft</u>

16

v. al-Kidd, 563 U.S. 731, 741 (2011) (emphasis added) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987). To meet this standard, existing precedent must have placed the constitutional question beyond debate. Id. (citation omitted). The inquiry must involve a high degree of specificity of the challenged conduct in relation to the existing precedent. D.C. v. Wesby, 138 S. Ct. 577, 590 (2018) (citation omitted). If "a reasonable officer might not have known for certain" that the particular conduct ascribed to him "was unlawful," then he "is immune from liability." Abbasi, 137 S. Ct. at 1867.

Thus, to apply the doctrine of qualified immunity, courts must look to the constitutional right at issue. Government officials are liable only for their own conduct; accordingly, they must have had some sort of personal involvement in the alleged constitutional violation. Argueta v. U.S. Immigration & Customs Enforcement, 643 F.3d 60, 71 (3d Cir. 2011). Liability under Bivens cannot be predicated on the doctrine of respondeat superior. See Iqbal, 556 U.S. at 676.

The Eighth Amendment's prohibition on cruel and unusual punishment applies to deprivations that constitute an "unnecessary and wanton infliction of pain," including "those that are 'totally without penological justification.'" Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (quoting Gregg v. Georgia, 428 U.S. 153, 183 (1976)). "[A] prison official violates the Eighth Amendment only

17

when two requirements are met." Farmer v. Brennan, 511 U.S. 825, 834 (1994).

First, "the deprivation alleged must be, objectively, 'sufficiently serious,'" resulting in "the denial of 'the minimal civilized measure of life's necessities.'" Id. at 834 (quoting, respectively, Wilson v. Seiter, 501 U.S. 294, 298 (1991) and Rhodes v. Chapman, 452 U.S. at 347)). The Eighth Amendment "'does not mandate comfortable prisons.'" Wilson, 501 U.S. at 298 (quoting, Rhodes, 452 U.S. at 349). However, it is "cruel and unusual punishment to hold convicted criminals in unsafe conditions." Youngberg v. Romeo, 457 U.S. 307, 315–316 (1982); see also Helling, 509 U.S. at 33 ("The Amendment, as we have said, requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.'") (quoting DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 200 (1989)).

In challenges to conditions that pose an "unreasonable risk of serious damage to [a prisoner's] future health," a prisoner must allege that the exposure is of an unreasonably high level. Helling, 509 U.S. at 35. The objective factor of the claim "also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Id. at 36.

18

Second, for an Eighth Amendment conditions of confinement claim, "a prison official must have a 'sufficiently culpable state of mind.'" Mammana v. Fed. Bureau of Prisons, 934 F.3d 368, 372–73 (3d Cir. 2019) (quoting Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297.). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety ...." Id. (quoting Farmer, 511 U.S. at 834) (quoting Wilson, 501 U.S. at 302-03.) "[D]eliberate indifference requires that the 'prison official must both know of and disregard an excessive risk to inmate health or safety.'" Id. (quoting Woloszyn v. County of Lawrence, 396 F.3d 314, 321 (3d Cir. 2005) (omissions in original) (quoting Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001)).

### 2.   The Parties' Arguments

Defendants contend, under the first step of the qualified immunity test, that neither Warden Hollingsworth nor Warden Ortiz personally participated in the deprivation of a constitutional right. (Defs.' Brief, ECF No. 65-1 at 24.) The sole allegations of personal involvement against the wardens are that they were "aware" of the asbestos, water contamination, mold, inadequate ventilation, lack of sanitation, and overcrowding, and that they "maintained policies that allowed these conditions" to persist; in other words, mere conclusory statements. (Id. at 25.)

Defendants state that Plaintiff does not allege how the wardens had control over things such as the water supply, asbestos tiling on the floor, flight paths of jets, or the designation of federal inmates to this particular facility. (Id. at 25-26.) Defendants argue that the law requires far more to proceed on a Bivens claim. (Id. at 26.) Because Plaintiff has not alleged the personal involvement required to hold an individual responsible for damages under Bivens, the claims against the individual defendants should be dismissed at the first step of the qualified immunity analysis. (Id. at 27.)

At the second step of the qualified immunity analysis, Defendants assert that it would not be clear to a reasonable officer that his conduct was a violation of a specific right, where the conduct was awareness of asbestos, mold, jet fumes, poor bathroom sanitation and overcrowding. (Defs.' Brief, ECF No. 65-1 at 28.) Defendants argue that "awareness" of these conditions, in the absence of further allegations that the Wardens had any information regarding Plaintiff's health conditions or health concerns, is not something that a reasonable officer would believe violated a clearly established constitutional right. (Id.) Defendants submit they are entitled to qualified immunity. (Id.)

Plaintiff disagrees, noting that prison officials have an obligation to provide adequate food, clothing, shelter, medical care, and must "take reasonable measures to guarantee the safety

of the inmates." (Pl's Opp. Brief, ECF No. 73 at 19, quoting <u>Stile</u> <u>v. United States</u>, Civ. No. 17-2693 (RMB), 2017 WL 4779617, at *3 (D.N.J. Oct. 23, 2017). Plaintiff contends that he alleged a sufficient factual basis to show that the Warden Defendants were aware of the serious constitutional violations occurring at Fort Dix, were deliberately indifferent to those violations and acquiesced to them. (<u>Id.</u> at 19-20.)

Plaintiff refers to allegations in the amended complaint that Defendants were aware of the water contamination at levels thousands of times higher than the federal government's health advisory level for drinking water, yet they refused to provide Plaintiff with an alternative water supply, compelling him to continue to consume contaminated water. (<u>Id.</u> at 20.) Similarly, he alleges Defendants were aware of the dangerous level of asbestos, mold and polluted air from jet fumes, exacerbated by inadequate ventilation in the prison, and that he complained to Defendants that these conditions were exacerbating his medical conditions and increasing his risk of cancer and other future harm to his health. (<u>See</u> <u>generally</u>, Am. Compl., ECF No. 51.)

Likewise, Plaintiff alleges the Warden Defendants were aware of the widespread overcrowding at Fort Dix, leading to unsanitary conditions. (Pl's Opp. Brief, ECF No. 73 at 21.) Plaintiff contends that the persistence, duration, and scope of the overcrowding

showed that the Warden Defendants "maintained a policy of overcrowding" that resulted in sanitation problems. (Id.)

### 3. Analysis

#### a. Overcrowding Claim

Plaintiff's overcrowding claim is not supported by clearly established precedent. Brown v. Plata is relevant Supreme Court precedent governing Eighth Amendment claims concerning overcrowded prisons. 563 U.S. 493 (2011). In Plata, the Court affirmed an injunction requiring a 137.5% design capacity prison population limit, necessary to provide constitutionally adequate medical and mental health care to prisoners. Id. at 541. The lower court found the extent of overcrowding, 190% of systemwide design capacity, was "extraordinary" and "almost unheard of." Coleman v. Schwarzenegger, 922 F. Supp. 2d 882, 920 (E.D. Cal. 2009). Overcrowding in the reception centers was at or above 200% design capacity, making "it impossible to provide adequate medical and mental health services to inmates entering the California prison system." Id. at 924. Space was insufficient to screen and treat prisoners. Id. Exam rooms were so small that actual physical exams were virtually impossible. Id.

Other issues impacted by the overcrowding in Plata included forcing prisons to house 25% of prisoners outside of their classification levels; severe bed shortages at every level of mental health care, resulting in inmates "decompensating and …

22

ending up in mental health conditions far more acute than necessary;" triple bunking in gymnasiums and dayrooms never meant for housing, with documented disease outbreaks and riots; inadequate staffing in addition to inadequate space to provide for additional staffing; and an increase of foreseeable and preventable suicides. See generally 922 F. Supp. 2d 882 (E.D. Cal. 2009).

Plaintiff's allegations of overcrowding, that he was housed in a twelve-man room with only 43 square feet per inmate and that the overcrowding caused spread of disease and unsanitary conditions such as overflowing trash cans, excessive humidity from the showers, leaking pipes, and unsanitary shared telephones, fall far short of the clearly established precedent of an Eighth Amendment violation in Plata. See also Hubbard v. Taylor, 538 F.3d 229, 233-34 (3d Cir. 2008) (triple-celling of pre-trial detainees with only sixteen unencumbered square feet per prisoner in a cell did not violate the Constitution where adequate space existed in common rooms). The Court will grant qualified immunity to Defendants on Plaintiff's Eighth Amendment overcrowding claim.

### b. Remaining claims of dangerous environmental conditions

Apart from his overcrowding claims, Petitioner alleges exposure to mold, asbestos, jet fumes and contaminated water, conditions which allegedly violate the Clean Water Act, Safe

Drinking Water Act and Clean Air Act. (See Am. Compl., ¶¶13-59, 84-118.) The Supreme Court, in Helling, held that a plaintiff could state a cause of action under the Eighth Amendment by alleging that the defendants, with deliberate indifference, exposed him to levels of environmental tobacco smoke ("ETS") that posed an unreasonable risk of serious damage to his future health. 509 U.S. at 35. The plaintiff in Helling was housed in a cell with a five-pack a day smoker. Id. The Supreme Court explained that

> The Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. . . . the subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct.

Helling, 509 U.S. at 36.

The Supreme Court decision in Estelle is also relevant to Plaintiff's claims here. In Estelle, the Supreme Court clearly established that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, which violates the Eighth Amendment. 429 U.S. at 104. The Third Circuit, in Taylor v. Atkinson, 316 F.3d 257 (3d Cir. 2003), held that an illness arising from an inmate's exposure to an environmental toxin, ETS in that case, could constitute a serious

medical need if the condition endangered the inmate's existing health and appropriate medical treatment required removal from the exposure. Id. at 266-67 (citing Estelle, 429 U.S. 97).

Solely for purposes of this motion to dismiss, the Court accepts as true the allegations in the amended complaint concerning: (1) Plaintiff's level of exposure to toxins in the air and water at FCI Fort Dix; (2) his allegations that Defendants were aware of the serious to risk to his health posed by those conditions and their refusal to address those conditions; and that the conditions caused or exacerbated his illnesses and/ or caused a serious risk of future damage to his health. For the purposes of this motion, the Court will assume Plaintiff has stated an Eighth Amendment conditions of confinement claim, as described in Helling and Estelle. See Taylor, 316 F.3d at 263-66 (affirming district court's denial of qualified immunity where the plaintiff alleged facts which, if proven, would establish that "he was unwillingly exposed to levels of ETS [environmental tobacco smoke] that pose an unreasonable risk of future harm;" that "society has become unwilling to tolerate the imposition on anyone of continuous unwanted risks of second-hand smoke[;]" and that Defendants knew the ETS was dangerous and that Plaintiff was exposed to it.)

For the second prong of the qualified immunity analysis, however, the Court cannot accept disputed factual allegations as true. The Court must determine whether the environmental

25

conditions were such that a reasonable officer would believe he violated a clearly established constitutional right by not taking action to protect Plaintiff from the dangers posed to his health, and that dangers to his future health were of the type that society was unwilling to tolerate imposition of those risks on anyone unwilling. See Atkinson, 316 F.3d at 264 (affirming denial of qualified immunity at the summary judgment stage without weighing the underlying evidence). For certain of the alleged dangerous conditions, discovery is needed. The Court will discuss each condition in turn.

Plaintiff alleges daily jet activity of takeoffs and landings in close proximity to the building where he was housed caused him to breathe carbon monoxide fumes at a level sufficient to cause him to suffer a serious medical need or that the condition posed a serious risk to Plaintiff's future health, and that the Defendants were aware of these facts and did nothing to protect Plaintiff. (Am. Compl. ¶¶47-59.) Plaintiff has not pled sufficient facts to establish that defendants were deliberately indifferent to his serious medical need caused by air pollution from jet activity. He has not alleged that he complained to any medical provider about symptoms he suffered after breathing jet fumes or that any medical provider recommended that he be removed from the area where jet fumes polluted the air. Further, the Court cannot conclude, based on the facts alleged in the complaint, "that

society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Helling, 509 U.S. at 36. Therefore, Defendants are entitled to qualified immunity on Plaintiff's Eighth Amendment claim regarding air pollution from jet activity.

Plaintiff also alleges he was exposed to black mold for two years, that it permeated his entire residence, particularly the showers, and that the ceiling fans caused the mold spores to become airborne, exacerbating his COPD and emphysema. (Am. Compl. ¶¶39-46.) He alleges inadequate ventilation exacerbated the risks to his health. (Id. ¶¶56, 58, 62.) "The mere presence of mold does not indicate an objectively serious deprivation of life's necessities." Forde v. Fischer, No. CIV.A 08-5026(JAG), 2009 WL 5174650, at *4 (D.N.J. Dec. 16, 2009) (listing cases). Plaintiff has not alleged the basis for his belief that exposure to the mold was dangerous to his health or that Defendants were aware it was dangerous and they did nothing to alleviate it.[2] The Court concludes Defendants are entitled to qualified immunity because

---

[2] If Plaintiff can allege facts supporting his knowledge that the black mold he was exposed to was dangerous, or that a medical provider recommended that he should not be exposed to the mold because it exacerbated his medical conditions and defendants were deliberately indifferent to the medical provider's recommendation, he can seek reconsideration of Defendants' qualified immunity on this claim.

the risk caused by mold, if it is not known to pose a danger to a person's health, is not "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk."

Plaintiff also alleges that he complained to Defendants that exposure to the mold exacerbated his COPD and emphysema. Defendants, however, are the warden and former warden of the facility, not medical providers. "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Plaintiff does not allege that he complained to a medical provider about exacerbation of his symptoms and they refused to treat him or that the non-medical defendants ignored a medical provider's recommendation for removal of the mold or moving Plaintiff to a different environment. Based on these allegations, Defendants are entitled to qualified immunity because Plaintiff fails to state an Eighth Amendment claim.

Plaintiff alleges he was forced to drink and bathe in water contaminated by lead, PFOA, TCE, PCE, vinyl chloride, benzene, halogenated hydrocarbons and other dangerous chemicals, far in excess of the safe level for drinking by government standards. (Am. Compl., ECF No. 51 ¶¶13-38.) Discovery is required to show

the level of these contaminates in the water, the duration of time that Plaintiff consumed water that was contaminated at this level, and that Defendants were aware the contamination created a serious medical need or that the contamination posed a serious risk to Plaintiff's future health.

The presence of asbestos is another condition that Plaintiff alleges was harmful to his health. Plaintiff alleges he was exposed daily to asbestos in the flooring tiles and mastic glue, which were worn down and created airborne dust when swept and stripped; he was exposed to airborne asbestos during a three-day law library demolition; and he was exposed daily to asbestos laden pipe coverings throughout the buildings, all of which infiltrated his lungs over two years. (Am. Compl. ¶¶84-103.) Although Plaintiff's claims appear overstated, as they are generalized, discovery is required to determine whether Defendants knew that the wear and tear on the floor tiles or the asbestos on pipe coverings caused asbestos to become airborne; whether Defendants knew that if Plaintiff was in the law library during the three-day demolition he would be exposed to a dangerous level of asbestos, and whether they knew these conditions harmed Plaintiff's health or posed a serious risk to Plaintiff's future health.

In sum, the Court cannot determine whether Defendants are entitled to qualified immunity without discovery on these questions of fact concerning contaminated water and asbestos

29

exposure. <u>See</u> <u>Oliver v. Roquet</u>, 858 F.3d 180, 189 (3d Cir. 2017) (postponement of qualified immunity defense pending discovery is appropriate where, without discovery, a plaintiff "would be foreclosed from being able to show that there is a question of fact as to whether [the defendant] knowingly violated his [constitutional right]."

V.   CONCLUSION

 For the reasons discussed above, Defendants' partial motion to dismiss Counts I, II and III of the amended complaint is granted in part, and denied in part. Plaintiff's FTCA claims are dismissed for lack of jurisdiction. Defendants are entitled to qualified immunity on Plaintiff's Eighth Amendment overcrowding claim, jet fume exposure claim and mold exposure claim. The Court postpones ruling on Defendants' qualified immunity to Plaintiff's remaining Eighth Amendment conditions of confinement claims, pending discovery.

An appropriate Order follows.

Date:  **June 3, 2020**    <u>s/Renée Marie Bumb</u>
             **RENÉE MARIE BUMB**
             **UNITED STATES DISTRICT JUDGE**